IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS DIVISION

**STATE OF WEST VIRGINIA**,

   Plaintiff,

          v.

**UNITED STATES DEPARTMENT OF
HOMELAND SECURITY;** and

**ALEJANDRO MAYORKAS**, in his official
capacity as the Secretary of the United States
Department of Homeland Security

   Defendants.

Case No. 2:21-CV-22

(Judge Kleeh)

## <u>RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO STAY ACTION AND MOTION FOR ADMINISTRATIVE STAY</u>

Now comes Plaintiff, the State of West Virginia, by counsel, and opposes Defendants' Motion to Stay and supporting memorandum of law (collectively, the "Motion") and Motion for Administrative Stay (collectively the "Motions").  Defendants' Motions are based on two inaccurate premises: (1) any relief this Court could grant in this case would surely conflict with the relief granted in the referenced Texas case and (2) there is no significant difference between this case and the Texas case.  Neither is true, and this case should continue to move forward on the same schedule as previously set.  Accordingly, both Motions should be denied.

## <u>INTRODUCTION</u>

The Biden Administration's termination of the Migrant Protection Protocols ("MPP") has created extensive harm at the southwest border and across the United States, reaching as far as West Virginia.  Among other things, it has resulted in increased smuggling of drugs, particularly

fentanyl.  Under MPP, aliens from Central America who arrive at the southern border claiming asylum typically were required to remain in Mexico pending resolution of their asylum claims. This policy ensured aliens could not use fraudulent claims of asylum to gain entry into the United States. As a result, it removed a powerful incentive for illegal border crossings.

The Biden Administration suspended this effective program on January 20, 2021 (the "Suspension Decision"), and then Secretary Mayorkas terminated it on June 1, 2021 (the "Termination Decision"), issuing a memorandum the same day explaining the Termination Decision (the "June Termination Memorandum").  Besides harming border states and interior states, including West Virginia, MPP's termination violated the Administrative Procedure Act ("APA"), the Immigration and Nationality Act ("INA"), and the Constitution.

After the Suspension Decision, on April 13, 2021, Texas and Missouri sued to enjoin the suspension of the MPP.  *See Texas v. Biden*, No. 2:21-cv-00067 (N.D. Tex. Aug. 13, 2021) (the "Texas Case").  Those plaintiffs later filed an amended complaint to address the MPP's subsequent termination in June.  On August 13, 2021, that Court determined that the termination of MPP was, among other things, arbitrary and capricious and issued an injunction against the enforcement of the decision to terminate the MPP.[1]  DHS then appealed that ruling.

On October 29, 2021, DHS issued a new memorandum with the subject "Termination of the Migrant Protection Protocols" (the "October Termination Memorandum") in which Secretary Mayorkas "once more assessed whether MPP should be maintained, terminated, or modified" and concluded that he was "hereby terminating MPP."  DHS on the same date issued a 39-page memorandum titled "Explanation of the Decision to Terminate the Migrant Protection Protocol" (the "Explanation Memorandum").

---

[1] Memorandum Opinion and Order, *Texas v. Biden*, No. 2:21-CV-067-Z (N.D. Tex. Aug. 13, 2021), ECF No. 94, 2021 WL 3603341 (the "Texas Court Order").

On December 2, 2021, DHS issued "Guidance Regarding the Court-ordered Reimplementation of the Migrant Protection Protocols" (the "Reimplementation Guidance") that purported to reinstate the MPP program to comply with the Texas Court Order. However, the Reimplementation Guidance contains loopholes and exceptions that go beyond the statutory authority of DHS, undermining the reimplementation of the MPP program, and is invalid under the APA and the Immigration and Nationality Act ("INA") (8 U.S.C. 1101, et. seq.).

## LEGAL STANDARD FOR A STAY OF AN ACTION

The standard for a stay, cited in the Motion, is as follows: "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc*., 715 F.2d 124, 127 (4th Cir. 1983). *Williford* involved the automatic bankruptcy stay and imposed a heavy burden on the movant for a stay. The *Williford* standard is high, but there is more. *Williford* cited *Landis v. N. Am. Co.*, which explained that "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. *Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.*" 299 U.S. 248, 255 (1936) (emphasis added). The language in *Landis* depicts a standard higher than even *Williford* illustrates on its own, and the Motion does not meet it.[2]

## ARGUMENT

### 1.  The Court is Not at Risk of Issuing Conflicting Injunctions

---

[2] Defendants also cite to the high profile case of *Clinton v. Jones*, 520 U.S. 681, 707 (1997), for the proposition that district courts have "broad discretion to stay proceedings." The stay issued by the district court there was then reversed by the Supreme Court as an abuse of discretion, illustrating the high standard set forth above.

The Motion's argument for a stay is premised on some facts that are not (and may never become) extant here.  This case is about more than injunctive relief.  Indeed, no such motion, let alone one pursuing an inconsistent order in this matter, has been filed at this point.  A motion to stay based on a hypothetical future motion in which any requested relief might possibly conflict with the Texas Court Order is just that – hypothetical.  On this basis alone, the Court should deny Defendants' Motion.

In any event, Plaintiff's Amended Complaint addresses the validity of the Suspension Decision, the Termination Decision, the subsequent trio of memoranda (the June Termination Memorandum, the October Termination Memorandum, the Explanation Memorandum), and the Reimplementation Guidance.  The October memoranda and Reimplementation Guidance were yet to exist at the time the *Texas* court issued its August 13 decision.  The latter is invalid insofar as it exceeds the Defendants authority by adding loopholes and exceptions not authorized by law.  *See* Amended Complaint at 138.  This is no minor issue; not only is exceeding one's authority a concern on its own, improper exceptions that remove impediments to fentanyl trafficking have practical consequences (e.g. overdoses) that are real and devastating.

In response to the State's concerns about legal deficiencies in the Reimplementation Guidance, Defendants suggest that the *Texas* court found that this was a "good faith" reimplementation of the MPP.  See Motion at 4-5.  However, the Texas court issued the quoted order on November 18, 2021 – two weeks before the Reimplementation Guidance was issued on December 2, 2021.  Additionally, the *Texas* court did not say that DHS was reimplementing MPP in "good faith."  Rather, the *Texas* court found that "none of Plaintiffs' specific claims of Defendants' bad-faith failure are clear and convincing."  *Texas v. Biden*, No. 2:21-CV-067-Z, 2021 WL 5399844, at *4 (N.D. Tex. Nov. 18, 2021).  This is distinct from an affirmative finding

4

of good faith compliance.[3]  Defendants are correct that Defendants are not required to implement MPP in the same manner as the prior administration, but that does not include the freedom to issue guidance (i.e. the Reimplementation Guidance) that violates the law as Plaintiff has alleged.  See Amended Complaint at 134-156.

But in any event, these arguments beg the question of whether the October Termination Memorandum or the Reimplementation Guidance is lawful.  Those questions have not been fully litigated.

Defendants next argue that Plaintiffs might ask this Court to reimplement the MPP in a contradictory manner to the *Texas* court in a way that would step on the toes of another court.  But a vague hypothetical of possible conflicts is hardly a reason for a stay.  Plaintiff cites six cases for the general proposition that "concerns arise" when there are similar cases in different federal courts.  *TPM Holdings, Inc. v. Intra-Gold Indus., Inc*., 91 F.3d 1, 4 (1st Cir. 1996).  Also, courts should "exercise care in interference with each other's affairs."  *W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*, 751 F.2d 721, 728 (5th Cir. 1985); *see* Defendants' Memo at 9, ECF No. 19.  But, *in all but one of these* cases, the courts declined to grant the type of stay Defendants request here.  And in that one case—*W. Gulf Mar. Ass'n v. ILA Deep Sea Loc. 24, S. Atl. & Gulf Coast Dist. of ILA, AFL-CIO*—the 5th Circuit found that the second filed case should have been "stay[ed], transfer[ed], or dismiss[ed]" in favor of the first filed case.  751 F.2d at 728.  But the Fifth Circuit decision is not similar to the issues raised in this case.

---

[3] In fact, the *Texas* court implicitly recognized that the government very well may not have acted in good faith because it ordered that the plaintiffs would be permitted to conduct discovery to determine if, in fact, the defendants in that case were properly reimplementing the MPP. *See* Memorandum Opinion and Order at *5, *Texas v. Biden*, No. 2:21-CV-067-Z (N.D. Tex. Nov. 18, 2021), 2021 WL 5399844.

Plaintiff of course agrees that the courts should exercise care in the relief provided to avoid "stepping on the toes" of other courts.  But that does not mean that courts should prevent parties from presenting their own cases based on the possibility that the court may have to watch where it steps when fulfilling its Article Three responsibilities to adjudicate cases and controversies.  That would be antithetical to justice and the flexibility of judges to act not in conflict with one another.  Indeed, in *TPM Holdings*, the court explained that "where the overlap between two suits is less than complete, the judgment is made case by case.  91 F.3d at 4 (citations omitted).

Here the overlap is far less than complete.  The plaintiff is not the same, and even the defendants are not all the same. But more importantly, while both cases involve the APA and Section 1225, the regulatory documents challenged in the two cases are not all the same.  The *Texas* case challenged the June Termination Memorandum.  This litigation challenges the October memoranda and the Reimplementation Guidance.

The Motion further evinces concern that this Court "may" come to "any number of conclusions" that "may" somehow interfere with the *Texas* court's nationwide injunction.  A hypothetical inclusive of two "mays" and "any number" seems a distant prospect.  One could theorize all day long about those possibilities, but the *Texas* court did not address all facets of the legality of either the October memoranda or the Reimplementation Guidance since these were not asserted in the pleadings.[4]  Further, it appears that neither the *Texas* plaintiffs nor the government have asked that court to do so in any motion practice.

Indeed, while DHS here asserts that all the issues and claims are the same as those that have been reviewed in the *Texas* case, it is trying to avoid a review of those very same

---

[4] The State recognizes the attention given by the Fifth Circuit to the October memoranda, but it also notes the government's request for certiorari on that and other points.

documents in the *Texas* case.  First, DHS told the Fifth Circuit that, because it had replaced the June Termination Memorandum with the October Termination Memorandum (after the Texas Injunction was issued), the entire case was moot and the Circuit Court could not even review the new October Termination Memorandum.  Specifically, the government argued, "[t]hat memorandum [the June Termination Memorandum] no longer exists, and so any challenge to it is now moot."  Suggestion of Mootness and Opposed Motion to Vacate and Remand at 11, *Texas v. Biden*, No. 21-10806 (5th Cir. Oct. 29, 20201), ECF No. 00516074960.  The Fifth Circuit rejected this argument,[5] but the government has renewed this argument in its Petition for Writ of Certiorari as its second question presented.[6]  Then, DHS told the *Texas* court on December 2 that it did not have jurisdiction to "modify the injunction" in that case, which seemingly would include modifying it to address issues relating to the post-judgment issuance of the Reimplementation Guidance.  *See* Defendants' Motion to Reconsider at 7, *Texas v. Biden*, No. 2:21-cv-067-Z (N.D. Tex. Dec. 2, 2021), ECF No. 118.

Taken together, it almost appears that the government has argued to the *Texas* courts that they could not review either of these documents because they were not part of the amended complaint in that case and that the court lacked jurisdiction to do anything about them, and now the Motion argues that this Court cannot review those two documents in this case because the *Texas* case *might* adjudicate the legality of those two documents.  If there is an adjudication of that nature, it will come in spite of the government's best efforts to block review there; regardless, even if that would occur, it is not an absolute bar to the instant litigation progressing.

---

[5] *Texas v. Biden*, No. 21-10806, 2021 WL 5882670, at *13 (5th Cir. Dec. 13, 2021), as revised (Dec. 21, 2021)
[6] "2. Whether the court of appeals erred by concluding that the Secretary's new decision terminating MPP had no legal effect." *See* Petition of Writ for Certiorari at I, *Biden v. Texas*, No. 21-10806 (U.S. Dec. 29, 2021), *available at* https://www.supremecourt.gov/DocketPDF/21/21-954/206810/20211229162636127_Biden%20v.%20Texas%20-%20Cert%20Petition.pdf.

The Motion suggests, without any evidentiary support or other support, that the Reimplementation Guidance was (1) designed to comply with the concerns of the government of Mexico ("GOM") and (2) to comply with the Texas injunction.  Both of these claims are exactly the type of representation that, in fact, demonstrate that this litigation should go forward.

First, Defendants claim that the Reinstatement Guidance "incorporates specific measures designed to address Mexico's concerns, including, *inter alia*, additional safeguards to protect vulnerable individuals" and that "these measures – which were necessary to secure Mexico's agreement to cooperate in restarting MPP – are among the things Plaintiff challenges and seeks to enjoin in this action." Motion at 11.  The State has concerns about a number of the provisions of the Reimplementation Guidance that go beyond DHS' authority.  This begs the question of which specific measures did Mexico require.  The Reimplementation Guidance itself does not reveal the answer.  Even if it did state which provisions were required to secure the agreement with Mexico, this begets more questions.  Where is the evidence that such requirements were necessary to re-implement MPP?  Did Mexico demand those items or were they offered without full appreciation of potential issues that may have been created?  Did Mexico demand that DHS expand the exemptions from the MPP program beyond what international law requires?  Is the "agreement with Mexico" publicly available?  It does not appear to be posted on the DHS website nor did the Defendants submit it to the Court in the Motion to Stay.  Certainly, Plaintiff is now entitled to discovery on this issue to determine the answers to these (and other) questions and what the Court should enjoin without endangering the agreement with Mexico.

Second, while Defendants claim that Reimplementation Guidance responds to the Texas Injunction, at the same time, as discussed above, they told the *Texas* court that it does not have jurisdiction to modify the injunction, which would include adding to the Texas Court Order to

address the legality of the Reimplementation Guidance.  But even if Defendants conceded that the *Texas* court could examine whether the Reimplementation Guidance complied with the Preliminary Injunction, that does not allow the Texas court to litigate an unpled claim that said document is unlawful based on the APA and Section 1225. The only lawsuit that challenges its legality is the Amended Complaint in this case.

Defendants finally claim that this case threatens the separation-of-powers doctrine, citing *Loving v. United States*, 517 U.S. 748 (1996).  But that case stands for the unrelated proposition that the lawmaking function belongs to Congress and may not be conveyed to another branch or entity.  This has nothing to do with this case.  Plaintiff in the very same paragraph also pivots to *Feller v. Brock*, in which the court stated the obvious that when a district court's "preliminary injunction directly conflicts with [another] outstanding injunction against DOL," "the grant of conflicting preliminary relief was an abuse of discretion."  802 F.2d 722, 730-31 (4th Cir. 1986). Of course, the State has no intention of asking this Court to do that and no expectation that this Court would do that.  To the extent that Plaintiff seeks any injunction, it will seek one which is consistent with the existing injunction, though it would possibly ask the Court to additionally enjoin other illegal actions that DHS took after the Texas Court Order was issued.

## 2.  A Stay of Limited Duration Would be for an Extended Time and Prejudice Plaintiff.

Defendants next claim that a stay would not prejudice the State and, as proof, Defendants insist that at the telephonic meet and confer on December 21, 2021, Plaintiff "could not articulate any specific prejudice that Plaintiff will suffer as a result of the stay."  Motion at 13.  This characterization is inaccurate.  That was not the impetus that drove the State's counsel to seek

that telephonic discussion[7] and Plaintiff had no obligation to identify such prejudice at that time, nor was there any reason to believe that Defendants' counsel reasonably expected there to be an articulation of such specific prejudice during that call.[8]

In fact, the prejudice is simple and real. First, the MPP is not, as Defendants claim, "operational." As alleged, and in fact documented, in the Amended Complaint, the Reimplementation Guidance's loopholes and exceptions make its utility as an operational MPP questionable at best. Even putting that aside, fentanyl trafficking, fentanyl deaths, and illegal immigration appear to continue apace or to climb by all indications. This is not a positive indicator of an "operational" and effective MPP program.

Moreover, the prediction that the requested stay would be of limited duration is speculative. Of course, "it is difficult to make predictions, especially about the future." (Original author unknown). The Motion informs that, "to quickly resolve the Texas litigation, the government has asked the Supreme Court to hear and decide the Texas case this term." Motion at 13. That is not firmly reassuring of anything moving forward. The Supreme Court may or may not accept the case for this term or the next term; it may or may not accept it at all. If it does accept jurisdiction and ultimately rules on the matter before it, it will not resolve all issues in this matter, such as the legality of the October Termination Memorandum and the Reimplementation Guidance..[9] Holding all these things in abeyance for an indeterminate time

---

[7] Plaintiff was urgently seeking Defendants' position relative to a motion for extension of time to file a preliminary injunction motion, which position was not provided until after the Amended Complaint was filed on December 22, 2021.

[8] To the contrary, in response to Defense counsel's suggestion of a stay and request for Plaintiff's position, Plaintiff's counsel indicated that a position update would be provided the following week following an internal discussion (owing to the unavailability of related personnel at that time given the approaching holiday).

[9] While the government has not asked the Supreme Court to resolve the validity of the October Termination Agreement, the government has asked the Supreme Court to contradict the Fifth Circuit and determine that the October Termination Memorandum was a new agency action that superseded the June Termination Memorandum. But, assuming the Court addresses that argument favorably for the government, it would not resolve the legality of the October Termination Memorandum as this Plaintiff asks in this case.

period on the possibility that the Supreme Court might address some issues and the consequences thereof prejudices the Plaintiff.

### 3.  A stay will cause undue delay not promote judicial economy.

Completely freezing any progress in this case does not promote judicial economy.  The Motion's argument that a stay will conserve judicial resources might be valid if this case raised no additional issues outside of those addressed by *Texas v. Biden*.  Additional arguments have been raised by Plaintiff and thus require judicial review.  For example, Plaintiff's Amended Complaint addresses the October Termination Memorandum which stated that Secretary Mayorkas "once more assessed whether MPP should be maintained, terminated, or modified" and concluded that he is "hereby terminating MPP."  DHS, *Memorandum on Termination of the Migrant Protection Protocols* (Oct. 29, 2021), *available at* https://www.dhs.gov/sites/default/files/publications/21_1029_mpp-termination-memo.pdf.  The Fifth Circuit Court in *Texas v. Biden* specifically states that "the merits of DHS's actions on October 29 are not before us."  *Texas v. Biden*, No. 21-10806, 2021 WL 5882670, at *21 (5 Cir. Dec. 13, 2021), as revised (Dec. 21, 2021).  Additionally, the case of *Texas v. Biden* does not address the specific injury inflicted on Plaintiff by Defendants' termination of a critical border security program, namely consequences of increased fentanyl trafficked across the Southwest border from Mexico including increase of fentanyl-related drug overdose deaths.  Staying the proceedings would do nothing but delay inevitable de novo analysis of this Court regarding issues that have yet to be adjudicated.

The Motion tries to support this position with *Hickey v. Baxter*, 833 F.2d 1005 (4th Cir. 1987), 1987 WL 39020, an unpublished and inapplicable decision.  In *Baxter*, the requested motion to stay was granted pending a ruling by the Supreme Court in another case (wherein

11

certiorari had already been granted) on whether the Parental Kidnapping Prevention Act "create[d] a private cause of action," which was the crux of the *Baxter* case. 833 F.2d. at 1. *Baxter* was distinguished by *Bethel Ministries, Inc. v. Salmon*, wherein the District Court declined a stay after noting that, in *Baxter,* "the Supreme Court's decision would be completely dispositive as to whether appellant's claims could proceed[.]" No. SAG-19-01853, 2020 WL 1873623, at *3 (D. Md. Apr. 15, 2020).  The court concluded that, in that case, "litigation is almost certain to continue, regardless of the outcome in *Fulton*."  *Id.*

Similar to *Bethel Ministries*, the entirety of Plaintiff's claims will not be extinguished by any ruling of the Supreme Court in *Texas v. Biden*—even assuming the Court accepts jurisdiction.  In *Bethel Ministries*, the defendants sought a stay of the proceedings "based upon a recent Grant of Certiorari (in *Fulton v. City of Philadelphia*, 140 S. Ct. 1104 (2020)) by the United States Supreme Court."  2020 WL 1873623 at *2.  Defendants in *Bethel Ministries* pointed out that the issues in *Fulton* were substantially similar to their litigation and could prove helpful in resolving the case.  *Id.*  However, when the Court considered the issue of judicial economy is assessing whether to grant the motion to stay, the Court was "disinclined to stay proceedings because of theoretical possibility."  *Id.* at *3.

Unlike *Bethel Ministries*, the Supreme Court has not granted certiorari in *Texas v. Biden*, making Defendants' argument even more "theoretical."  Assuming a decision by the Supreme Court in *Biden v. Texas* would be instructive, which Plaintiff disputes (see discussion above), a stay predicated on such speculation has an equal chance of merely delaying the use of judicial resources as it does of conserving them.  Additionally, the Maryland District Court points out the value of potential guidance from a Supreme Court decision "must be weighed against the significant delay that will result for these proceedings."  *Bethel Ministries*, 2020 WL 1873623 at

12

*3.  The delay produced by a granting the Defendants' requested stay would halt this proceeding

for a minimum of several months and potentially for a year or more.  Such a delay would have a

significant detrimental effect on Plaintiff since the issue which urgently needs to be addressed is

the continued harm to West Virginia and West Virginians due to fentanyl overdoses.

     Defendants also cite to *White v. Ally Fin. Inc*., 969 F. Supp. 2d 451, 461-64 (S.D. W. Va.

2013) in support of their argument to grant the stay for the sake of judicial economy.

Interestingly, the Court in *White*, in considering the first factor of judicial economy, determined

that "little is gained by granting a stay in this case."  969 F. Supp. 2d at 462.  The Court ruled

that the factors set forth in *Landis* did not weigh in favor of granting a stay.  Here, just as in

*Bethel Ministries* and *White*, the factor of judicial economy weighs against granting Defendants'

Motion to Stay.  Rather than conserving judicial resources, a stay would only serve to cause

undue delay to the judicial proceeding and unjustifiable harm to Plaintiff.


## **CONCLUSION**

     Movants have not met their burden.  This is not one of the "rare circumstances*"* (*Landis*,

299 U.S. at 255) where the Plaintiff should be "compelled to stand aside*"* for the *Texas* case.

Defendants have not carried their burden to "justify it by clear and convincing circumstances

outweighing potential harm to the party against whom it is operative."  *Williford,* 715 F.2d at

127.  Accordingly, both Defendants' Motion to Stay and Motion for Administrative Stay should

be denied.


     Respectfully submitted,

     PATRICK MORRISEY
      *West Virginia Attorney General*

/s/ *Curtis R.A. Capehart*

Douglas P. Buffington II (WV Bar # 8157)
  *Chief Deputy Attorney General*
Brent Wolfingbarger (WV Bar # 6402)
  *Senior Deputy Attorney General*
Curtis R.A. Capehart (WV Bar # 9876)
  *Deputy Attorney General*
OFFICE OF THE WEST VIRGINIA
ATTORNEY GENERAL
State Capitol
Building 1, Room E-26
Charleston, WV 25305-0220
Telephone: (304) 558-2021
Facsimile: (304) 558-0140
Email: Curtis.R.A.Capehart@wvago.gov

*Counsel for Plaintiff, STATE OF WEST VIRGINIA*

DATE: January 7, 2022

14

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS DIVISION

**STATE OF WEST VIRGINIA**,

   Plaintiff,

         v.

**UNITED STATES DEPARTMENT OF
HOMELAND SECURITY;** and

**ALEJANDRO MAYORKAS**, in his official
capacity as the Secretary of the United
States Department of Homeland Security,

   Defendants.

Case No. 2:21-CV-22

(Judge Kleeh)

## CERTIFICATE OF SERVICE

     I hereby certify that, on this 7th day of January 2022, I electronically filed the foregoing

"*Response in Opposition to Defendants' Motion to Stay Action and Motion for Administrative

Stay*" with the Clerk of Court and all parties using the CM/ECF System.

                        /s/ Curtis R. A. Capehart